Brockenbrough, J.
Upon the trial of the ejectment in this case, the plaintiff offered in evidence a patent to *461 himself, dated in 1830, and a plat and certificate of survey (made in the cause) which shewed that the patent embraced the 20 acres the subject in controversy. The defendants gave in evidence a patent for 300 acres to Brechenridge, which emanated in 1785. They also offered evidence to shew that the owner of the land lying within the boundaries of the Brechenridge patent had settled upon the same for more than thirty years before the institution of the suit, and that the holders under this patent had cleared and fenced the lower part of the 20 acre lot (in controversy) more than 20 years, and cut down the timber above the said fencing more than 15 years before the institution of this suit, but that some clearing and cultivation was done by them on the upper part of the said lot within 15 years.
To illustrate this, it is necessary to refer to the diagram.* The holders of Brechenridge's patent fenced a part above the line AD for more than 20 years; they cut down timber next above that enclosure for more than 15 years; and they cleared and cultivated a part next to BC within 15 years.
Evidence was also offered (I presume this was by the plaintiff) to shew that the Brechenridge survey ran out at A; for the purpose of shewing that no part of the old survey and patent ran beyond, or included any part of Gore's survey of 20 acres.
The defendants then offered evidence to prove that the proprietor of Brechenridge's survey, shortly after the settlement thereof, claimed the land to the line BC (including the whole of Gore's subsequent survey) as lying within his patent calls, and that no possession adverse to Brechenridge's had ever existed.
The counsel for the plaintiff then moved the court to instruct the jury, that where a party settles on land by title, his possession extends to the exteriour boundary; and if in this instance the jury should believe, from the *462 evidence, that the line AD on the plat is the true upper t line and boundary of the Breclcenndge survey, then the claim set up by the defendants to the 20 acre tract lying between the lines AD and BC is not sufficient of it-’ self to make an adverse possession, but to make out a case of adverse possession under such circumstances, a pedis positio or enclosure should be shewn.
The court did no.t give the instruction as asked for, but instructed the jury that the pedis positio meant an actual entry accompanied by manifest acts of ownership, and that if they were satisfied that the defendants, ■and those from whom they deduced title, entered upon the land in controversj’' (the 20 acre lot) as a part of the Breckenridge patent, claiming to the line BC (the upper line) fencing and putting a part in cultivation, felling the timber preparatory to cultivation in another part, and exercising decided acts of ownership up to the upper line aforesaid, more than 15 years before suit, and that such occupation and possession had been continuous to the institution of the suit, it constituted an adversary possession to that line, although a part of the land should have been enclosed by actual fencing by the defendants, or those whose title they held, for a less period than 15 years.
I will here remark that the counsel of the plaintiff, in the latter part of the instruction which he asked for, seems impliedly to admit that such an adverse possession as he speaks of, that is, an enclosure, would bar the patentee of his action. In this I apprehend he admitted more than it was necessary for him to admit. No time runs against the commonwealth, unless where the legislature has thought proper to allow it. By the act of 1798 it is enacted that where lands have been settled for thirty years, and the taxes have been paid thereon within that period, no entry or location thereon shall be valid, and the commonwealth’s right to such lands is thereby relinquished. But there is nothing in *463 the case to shew that the defendants had settled on the 20 acre lot for 30 years before the plaintiff’s entry and location, and paid the taxes ; and of coarse that act did not apply to the case. And if, as the plaintiff contended, this lot had not been patented, he should not have admitted (even impliedly) that any pedis positio, even an enclosure of waste lands, would bar the common wealth, unless it continued for thirty years, and some tax had been paid on it.
.Now let us turn to the instruction actually given. I do not understand the judge as saying, that if the jury should be satisfied that the Mreclccnridge patent embraced the 20 acre lot, then the fencing and cultivation, and felling of timber, as described by him, would constitute an adversary possession against the junior patentee, This would have been unnecessary, because, if the senior patent embraced the 20 acres, then, whether there was any actual cultivation or enclosure of that lot or not, the plaintiff could not recover, because the defendants’ senior patent would prevail over the plaintiff’s junior patent.
The instruction is given on the hypothesis that the senior patent did not embrace the 20 acre lot; and then the instruction is, that such acts of occupation and possession by the defendants as he describes, do constitute an adversary possession. The court stops there, but the irresistible inference which the jury are to draw is, that such an adversary possession for 15 years, by one whose patent adjoins the lot but does not embrace it, will bar the action of him who has a patent covering the said lot, and will defeat the constructive seisin which that patent gave the plaintiff. The effect of this instruction is, that although no lime runs against the commonwealth, yet her immediate patentee is barred by such adversary possession for 15 years; that the act of limitations applies to the patentee, though it does not to the commonwealth. This appears to be a new princi *464 pie, and cannot, I think, be correct. If a patent will not prevail against a possession of unpatented lands for 15 years, what is the use of issuing the patent? It is a vain thing, and the commonwealth can confer no right by her grant, although she has complete dominion of the land, and has never before parted with it. It gives a license to intruders on waste and unappropriated lands, and an invitation to hold on for 15 years, cultivating a part here, felling trees there, and enclosing a piece in another place, so as to include these detached improvements in one tract. It would be tantamount to declaring that the act of limitations does extend to the commonwealth.
I am for reversing the judgment, and granting a new trial.
Carr, J.
This is an action of ejectment. The plaintiff claimed 20 acres of land, on Guyandotte river, and in support of his claim, produced a patent dated the 22d day of November 1830, and a survey made in the cause by order of court. The defendants relied on a patent to Breclcenridge, dated the 1st day of April 1785, and possession under it. On the trial, the court instructed the jury that if they were satisfied that the defendants, and those from whom they deduced title, entered upon the land between the'lines AD and BC as a part of the Breckenridge patent, claiming to the line BC, fencing and putting a part in cultivation, felling timber preparatory to cultivation in another part, and exercising decided acts of ownership up to the line BC, more than 15 years before the bringing this suit, and that such occupation and possession had been continuous up to the institution of this action, it constituted an adversary possession to that line, though a part of the land should have been enclosed by actual fencing by the defendants, or those whose title they held, for a less period than 15 years before the suit was brought. *465 This instruction I can only understand as predicated on the ground that the patent of Breckenridge did not cover the land in controversy, and that the plaintiff's patent did. The question could arise in no other way, that I can imagine; for if the elder patent actually covered the land, there would be an end of the case. No actual or constructivo possession need be talked about, against a patent only three years old, by a defendant in ejectment, holding in his hand a patent forty odd years old. This instruction then is, that if A. under an elder patent, has taken possession of land not covered by that patent, but waste and unappropriated, and holds this land more than 15 years, and then the commonwealth grants this land to B. and he brings ejectment immediately on the emanation of his patent, A.’s possession of more than 15 years is adversary to him, and of course bars him. This is perfectly new doctrine to me, and though supported with much ingenuity by the counsel in his notes, I cannot for a moment admit it. That no person can hold adversely against the commonwealth (under whom all hold) I consider a truism. Thirty years possession, indeed, and the payment of taxes, will give a good title; but this is because the commonwealth has so willed it. A law to that effect was necessary. If against the commonwealth there was at the date of the patent (.1830) not one year’s adverse holding, I cannot imagine how, in 1833, there could be, against her grantee, more than 15 years adverse possession. It seems to me a strange sort of relation, which not only runs back, but changes the very nature of the holding. I can acknowledge none such, and must say that the instruction was wrong, that the judgment must be reversed, and the cause sent back for a new trial, on which no such instruction shall., be given.
*466 Cabell, J.
I understand the instruction' given by ... ... . . , the circuit court as sustaining the position, that 11 a man enters on land claiming it under a grant from the commonwealth, which grant does not, however, embrace the land, and encloses or cultivates it, and remains in possession thereof more than 15 years, such possession may be relied on in bar of an ejectment brought by a person who has obtained a patent for the land since such possession."
I am clearly of opinion that the instruction was wrong. It is a maxim that no time runs against the commonwealth ; and the necessary consequence of this is, that no length of possession, however adverse, can bar or affect her rights. She may therefore grant her title to any other person, and the land in the hands of the grantee will be as unaffected by the previous possession of the person claiming under an invalid title, as it was in the hands of the commonwealth. To suppose the contrary, would be to advance the absurdity, that the commonwealth may have a perfect title to land, without the power of transferring it.
The judgment must be reversed, and the cause remanded for a new trial.
Tucker, P.
I am of opinion that no possession of waste and ungranted lands anteriour to the emanation of a patent from the commonwealth, can be set up as an adverse possession against the commonwealth, or against a subsequent patentee duly entering and obtaining a grant for the lands. No possession of un'granted lands can be adverse to the commonwealth, because no person within the commonwealth can hold except under her; and thus we must suppose the party as holding adversely to the only authority that can give title to the lands, without having obtained a title from that authority. Moreover, it is a conceded principle that no time runs against the commonwealth, so that in this *467 case there could have been no adverse possession, and no running of the statute, until the patent issued in 1830. Of course it operated no bar.
It is contended, indeed, that after the patent issued, the patentee should be taken to be barred by relation to the commencement of the possession of the defendants and those they hold under. Such a doctrine is now for the first time heard of. It is unsustained by authority. It is in conflict with the just and received notion that the grantee succeeds to the rights of the grantor, and may avail himself of those protections which would have been effectual for him. It would go to this, that the commonwealth, though she had a good title, could not confer one, and that the tenant, though he had no title at all before, acquired a good title, by the emanation of a patent to his adversary. And lastly, it would as completely defeat the rights of the commonwealth, as if the well settled principles above mentioned had never been introduced for her protection. For admit that though the possession of a squatter on ungranted lands shall not be held adverse to the commonwealth, and shall by no length of time bar her rights, such possession may yet be brought to bear upon a subsequent patentee, and the effect would be that no person would venture to take up such lands, and the commonwealth would thus be defrauded of their value. The position therefore cannot be sustained by the court.
I do not deem it necessary in this case to go into the examination of what constitutes an adverse possession. Whatever be the true doctrines on this subject, I think the superiour court erred in intimating to the jury that 15 years possession, under the circumstances, would constitute a protection to the defendants against the patentee. It is true the judge does not say in so many words that it would be a bar, but the jury might fairly have Inferred from what he did say, that he so understood it. Upon no other ground can it be conceived *468 that the verdict could have been found; and both counsel seem to have looked upon it in this light; the one contesting and the other sustaining the opinion. If the court had not designed to be so understood, the court should have prevented all misapprehension by stating that the possession having been before the patent, could not affect the commonwealth or her subsequent grantee.
I am of opinion to reverse the judgment, and send the cause back for a new trial. 1

 See ante, p. 459.